IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:17 CR 593 AGF |
| ) | |
| HEATHER MARIE MILLER, ) | |
| ) Defendant. | |
| ) | |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

1. **PARTIES:**

The parties are the defendant HEATHER MARIE MILLER, represented by defense counsel DIANE DRAGAN, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2. **GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Distribution of Heroin, a lesser offense necessarily included in Count I of the charge; and guilty to Distribution of Heroin, a lesser offense necessarily included in Count II of the charge; the Government agrees that no further federal prosecution will be brought

1

in this District relative to the defendant's distribution of heroin on or about August 3, 2016 and August 4, 2016, or arising out of the resulting death of R.K. or serious bodily injury to B.A., of which the government is aware of at this time.  Defendant understands that although she is pleading to the lesser included charges contained in Counts I and II, she will be agreeing that the death of R.K. and serious bodily injury of B.A. resulted from the use of heroin which the defendant aided and abetted in distributing resulting in the application of a higher advisory sentencing guideline range.

The parties agree that the U.S. Sentencing Guidelines Total Offense Level Analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea.  The parties agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein.  The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

3. **ELEMENTS:**

As to Count I, the defendant admits to knowingly violating Title, 21, United States Code, Sections 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. That on or about August 3, 2016, the defendant aided, abetted, and induced a distribution of heroin, a Schedule I controlled substance, and;

2. That she did so knowingly and intentionally.

2

As to Count II, the defendant admits to knowingly violating Title, 21, United States Code, Sections 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. That on or about August 4, 2016, the defendant aided, abetted, and induced a distribution of heroin, a Schedule I controlled substance, and;

2. That she did so knowingly and intentionally.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be considered as relevant conduct pursuant to Section lBl.3:

On August 3, 2016, investigators were dispatched to the Economy Inn in St. James, Missouri for a report of an unresponsive male, who was later identified as R.K.  Unable to get a pulse, investigators transported R.K. to the hospital where he was pronounced dead.  A hospital worker recovered R.K.'s cell phone and provided it to the police.  Sgt. Roger Jarrett processed the hotel room and located several syringes and a beer can with suspected drug residue.  One of the syringes contained hydromorphone.

Sgt. Jarrett began to examine R.K.'s cell phone.  He noticed a thread of text messages from August 3, 2016 wherein R.K. and "Heather" discussed "Heather" bringing R.K. what appeared to be controlled substances.  Thereafter, investigators began using R.K.'s phone to communicate with "Heather."  "Heather" agreed to supply R.K. with additional drugs.  Following, on August 4, 2016, defendant Heather MILLER and co-defendant Michael NATOLI responded to the hotel and were taken into custody.  Officers seized two small bags of heroin from MILLER.

3

While officers were interviewing MILLER and NATOLI at the hotel room, an investigator observed B.A. passed out in a vehicle that MILLER and NATOLI had driven in.  B.A. displayed labored breathing, rapid heartbeat, and recent puncture marks on his arms.  Officers noted that his pulse was becoming harder and harder to detect.  B.A. then stopped breathing and officers had to resuscitate him.  Officers recovered a white powder-like substance on his body which was later tested by a laboratory and found to contain heroin.  B.A. was transferred to the hospital and placed in the Intensive Care Unit.

Officers later interviewed B.A. after he recovered.  B.A. advised investigators that he purchased the heroin that he had overdosed on from MILLER for $120.  B.A. stated that MILLER gave him the heroin and NATOLI took the money from him.

TFO Seth Walker later advised MILLER of her *Miranda* rights.  MILLER advised TFO Walker that she and NATOLI traveled to St. Louis to purchase multiple grams of heroin from an individual "K.P."  She admitted that she met with victim R.K. on August 3, 2016.  MILLER placed the heroin on the bed and R.K. placed the money on the bed.  MILLER accepted the money and kept a few dollars for herself while returning the rest of the money to NATOLI.  When questioned about B.A.'s overdose, MILLER admitted that she had also supplied him with heroin.  She stated that B.A. paid NATOLI $110 and that she received $10.

The Medical Examiner conducted an autopsy of R.K.  The medical examiner subsequently determined that R.K. died as a result of heroin intoxication.  Expert testimony in the event of trial would establish that R.K. would not have died but for the ingestion of the heroin.

5. **STATUTORY PENALTIES:**

As to Count I, the defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000.00, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 3 years.

As to Count II, the defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000.00, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 3 years.

6. **U.S. SENTENCING GUIDELINES:  2018 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

    **a.**    **Chapter 2 Offense Conduct:**

    **(1)**    **Base Offense Level COUNT I:**  The parties agree that the base offense level is 38, as found in Section 2Dl.l(a)(2); because the defendant was convicted under 21 U.S.C. §84l(b)(l)(C) and the offense of conviction establishes that death resulted from the use of the substance.  Count II is grouped with Count I under USSG §3D1.2(d).

    **(2)**    **Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply:  None.

5

   **b.**  **Chapter 3 Adjustments:**

   **(1)**  **Acceptance of Responsibility:** The parties agree that three (3) levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

   **c.**  **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 35.

   **d.**  **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

   **e.**  **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not

apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7.  **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

    **a.** **Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1)** **Non-Sentencing Issues:**  The parties waive all rights to appeal all nonjurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

    **(2)** **Sentencing Issues:**  In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History.  Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

    **b.** **Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

  **c.** **Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER:**

  **a.** **Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

  **b.** **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

  **c.** **Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.  These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

  **d.**  **Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

  **e.**  **Possibility of Detention:**  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

  **f.**  **Fines, Restitution and Costs of Incarceration and Supervision:**  The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately. In addition, the Court may impose restitution (in addition to any penalty authorized by law) which will also be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

  **g.**  **Forfeiture:**  The defendant agrees to forfeit all of the defendant's interest in all items seized by law-enforcement officials during the course of their investigation. The defendant admits that all United States currency, weapons, property and assets seized by law enforcement officials during their investigation constitute the proceeds of the

defendant's illegal activity, were commingled with illegal proceeds or were used to facilitate the illegal activity.

The defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the government and to rebut the claims of nominees and/or alleged third party owners. The defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in

10

fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

10.    **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

11.    **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its

option, may be released from its obligations under this agreement.  The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

_____7-17-2020_____          _____
        Date                                    ERIN GRANGER, #53593MO
                                                                 Assistant United States Attorney

\_\_7/17/2020\_\_\_\_          _____
        Date                                    HEATHER MARIE MILLER
                                                                  Defendant

\_\_\_7/17/20_____          _____
        Date                                    DIANE DRAGAN
                                                                  Attorney for Defendant